## McCOLLUM v. STATE TAX COMMISSION

O. W. Goakey, Klamath Falls, argued the cause for plaintiff. O. W. Goakey, Klamath Falls, and Philip J. Engelgau, Klamath Falls, filed briefs for plaintiff.

Gerald F. Bartz, Assistant Attorney General, Salem, argued the cause and submitted a brief for defendant.

Decision for defendant rendered March 2, 1965.

EDWARD H. HOWELL, Judge.

This is an income tax case arising out of the refusal of the defendant State Tax Commission, to allow

plaintiffs to defer a capital gain from an involuntary conversion of plaintiffs' property by fire.

Plaintiffs were the owners of a retail lumber yard which was destroyed by fire on January 20, 1959. Plaintiffs used the proceeds from a fire insurance policy on the lumber yard to construct a bowling alley on the same premises.

Plaintiffs contend they are entitled to defer the capital gains resulting from the involuntary conversion of the lumber yard by the fire by virtue of ORS 316.295.[1]

The defendant State Tax Commission claims that a bowling alley is not "property similar or related in service or use" to the retail lumber yard, and therefore, plaintiff cannot qualify under the statute.

ORS 316.295 has not been interpreted by this court or the Oregon Supreme Court. The statute, however, is the same as Section 1033 of the Internal Revenue Code[2] and the latter statute has been interpreted many times (with almost as many different results) by the Tax Court of the United States and the various United States District and Circuit Courts.

█ The basic purpose of the statute is to allow the taxpayer to replace his property or continue his investment without realizing gain where he has lost the

---

[1] ORS 316.295. "(1) If property (as a result of its destruction in whole or in part, theft, seizure or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted:

"(a) Into property similar or related in service or use to the property so converted, no gain shall be recognized."

[2] "Sec. 1033 [1954 Code.] (a) General Rule.—If property (as a result of its destruction in whole or part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

"(1) Conversion Into Similar Property.—Into property similar or related in service or use to the property so converted, no gain shall be recognized."

property because of circumstances beyond his control. *Ponticos, Inc. v. Commissioner of Internal Revenue,* 40 TC 60, *reversed* 338 F2d 477 (7th Cir 1964), 14 AFTR2d 5962; *Filippini v. U. S.,* 200 F Supp 286 (DC Calif 1961), 9 AFTR2d 313, *affirmed,* 318 F2d 841 (9th Cir 1961), 11 AFTR2d 1720, *cert. denied,* 375 US 922, 84 S Ct 267, 11 Led2d 165 (1963); *Winter Realty Co. v. Comm.,* 149 F2d 567 (2d Cir 1945), 33 AFTR 1411; *Loco Realty Co. v. Comm.,* 306 F2d 207 (8th Cir 1962), 10 AFTR2d 5359.

■ Various tests have been applied by the federal courts to determine what replacement property qualifies as "similar or related in service or use" to the converted property. Generally the Tax Court of the United States has used the "functional" test. So has the State Tax Commission. The functional test is based upon a comparison of the actual physical characteristics and uses of the two properties, the original and the replacement. The similarity of the end or ultimate use of the property is controlling. This test is not as concerned with the status of the taxpayer, i.e., a lessor, investor, or the management activities of the lessor taxpayer as it is with a similarity of the end uses of the property. *Filippini v. U. S., supra; Loco Realty v. U. S., supra;* 10 Wayne L. Rev. 588 (1964); J. Taxation 217 (1962).

However, the federal courts have mainly disagreed with the functional test used by the United States Tax Court. When the federal courts have been confronted with cases where the taxpayer was an investor or a lessor the "functional end-use test has had rough going indeed." *Loco Realty Co. v. Comm., supra.*

The decisions of the various federal circuit courts have resulted in a variety of tests to be used to deter-

mine if the original and replacement properties were "similar or related in service or use."

*The Investment Test.* This test was used by the Fourth Circuit in *Steuart Bros. v. Comm.*, 261 F2d 580 (4th Cir, 1958), 3 AFTR2d 318. The plaintiff, an investment lessor, leased the original property for grocery and warehouse purposes and the replacement property was leased for an automotive business. The court rejected the functional test used by the Tax Court and held the statute was satisfied if there was an investment character in both properties and if they were of the same general class. The court appeared to be more impressed with the taxpayer's investor status than it did with his lessor's status.

*The Functional Test.* In the Third Circuit, *McCaffrey, Jr. v. Comm.*, 275 F2d 27 (3rd Cir, 1960), 5 AFTR2d 777, affirmed the Tax Court and extended the functional test. The court found that the involuntary conversion of a parking lot and reinvestment in the stock of a corporation which leased property for warehouse purposes did not qualify under the act. The court rejected the argument that both properties were investment and industrial assets and the court did not seem impressed with the taxpayer's lessor status. The court looked more to the lessees ultimate uses of the property.

*The Same General Class Test.* The Ninth Circuit considered the *Steuart* and *McCaffrey* cases in *Filippini v. U.S., supra.* In that case, the taxpaper leased land for farming with part of the land used for a drive-in theater. This was replaced by land with a commercial office building leased to various tenants. The court considered the investment and lessor status of the taxpayer but placed more emphasis on the same general class and held for the government on the

grounds the properties were not of the same general class.

*The Management Activity Test.* The Second Circuit reversed the Tax Court in *Liant Record, Inc. v. Comm.,* 303 F2d 326 (2d Cir, 1962), 9 AFTR2d 1557. This court emphasized the extent and type of the lessor's management activity, the type of service rendered to the tenants and the nature of the business risks involved. It also stressed the service or use of the properties to the taxpayer lessor, instead of the lessees of the property and held that the proceeds from the condemnation of an office building could be reinvested in an apartment building.

The Sixth Circuit followed the Second Circuit in *Clifton Investment Co. v. Comm.,* 312 F2d 719 (6th Cir, 1963), 11 AFTR2d 649. Applying the management activity test, the court held that an office building managed by the taxpayer, rented to commercial tenants and replaced by stock in a company which had controlling interest in a hotel building with 150 employees under professional management could not qualify. Although both properties were held for rental income the management activity of the taxpayer in the two cases was different.

However, the Sixth Circuit in November, 1964, in the case of *S. E. Ponticos, Inc. v. Comm., supra,* held that recognition of gain was proper where a leased six-story industrial warehouse was replaced by a leased residential garden type apartment house. The Circuit Court reversed the Tax Court and relied on *Capitol Motor Car Co. v. Comm.,* 314 F2d 469 (6th Cir, 1963), 11 AFTR2d 1023, wherein the court allowed a taxpayer to exchange a leased paint shop for a leased motel on the grounds the taxpayer was a lessor

in both cases and both properties were held for invest-
ment purposes.

The Seventh Circuit also followed the Second Cir-
cuit and the *Liant* case in *Pohn v. Comm.*, 309 F2d
427 (7th Cir, 1962), 10 AFTR2d 5780. Here the plain-
tiff taxpayer was a lessee of vacant Chicago land. The
lessor built a service station and the plaintiff sublet
the service station and later purchased it under an
option in the lease. After a condemnation the proceeds
were invested in vacant Florida real estate which was
subsequently leased for the construction of apartments.
The court held that the "service or use" to taxpayer
was the production of rental income and the same ap-
plied to the replacement property. The replacement
did not alter the nature of the investment.

*The Reasonable Similarity Test.* The Eighth Cir-
cuit has followed this rule in *Loco Realty Co. v. Comm.*,
306 F2d 207 (8th Cir, 1962), 10 AFTR2d. The original
property was rented to a shoe manufacturer and the
replacement property was rented to a grocery ware-
house. The court in a thorough review of prior de-
cisions decided that the statute must be viewed in its
application to the taxpayer and not to the tenant or
other person; that something more than investment
character is needed and that the property should be
of the same general class as required in the *Steuart*
and *Filippini* cases. The court also agreed with the
comparison of services or uses to the taxpayer-owner
in the leased premises. The court finally decided that
the property met these tests and reversed the Tax
Court.

The trend in the federal courts is toward a more
liberal interpretation of the statute. *S. E. Ponticos,
Inc. v. Comm., supra.* Prior to 1958 a stricter standard
of "similar or related in service or use" applied to an

involuntary exchange of property than it did to a voluntary exchange.

Section 1031[9] of the Internal Revenue Code requires only that the two properties be of a like kind on a voluntary exchange and held either for productive use in trade or business or investment. Oregon has a similar statute. (ORS 316.281)[4] Congress in 1958 indicated its displeasure with what it considered to be a narrow interpretation of the statute by the Internal Revenue Service and the Tax Court on involuntary exchanges and amended in Section 1033[5] by adding a "like kind" test in condemnation cases. *Fillippini v. U.S., supra; Loco Realty Co. v. Comm., supra;* 10 Wayne L Rev, pp 588, 593, (1964).

---

[9] "Section 1031 [1954.]  (a) Nonrecognition of Gain or Loss from Exchanges Solely in Kind—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidence in indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment."

[4] "ORS 316.281. Exchanges solely in kind. (1) No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interestion) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment."

[5] "Section 1033 (g). Condemnation of Real Property Held for Productive Use in Trade or Business or for Investment.—

"(1) Special Rule.—For purposes of subsection (a), if real property (not including stock in trade or other property held primarily for sale) held for productive use in trade or business or for investment is (as the result of its seizure, requisition or condemnation, or threat or imminence thereof) compulsorily or involuntarily converted, property of a like kind to be held either for productive use in trade or business or for investment shall be treated as property similar or related in service or use to the property so converted."

■ The functional test used by the State Tax Commission should not be applied in this case.

The plaintiffs owned both properties, the lumber yard and the bowling alley, as investments. In fact, plaintiff Melvin McCollum testified that he had a variety of investments including a large cattle ranch, some commercial rentals, several residential rentals, a music store, bottling company, another lumber yard and a logging business.

Some aspect of similarity beyond investment characteristics should be required. *Loco Realty v. Comm., supra.* The properties should be of the same general class. *Filippini v. U. S., supra.*

Here the plaintiff, Melvin McCollum, was the owner and lessor of the property and a member of a partnership which was a lessee of the lumber yard operated by a manager. Plaintiffs are the owners of the bowling alley which is not under a lease but is operated by a manager. It would appear that a retail lumber yard and a bowling alley would not be the same general class. While both were investments, one is commercial and the other recreational. A bowling alley would not seem to be a "substantially equivalent investment" to a retail lumber yard. *Filippini v. U. S., supra.* A lumber yard is a retail outlet dealing in various building and allied products while a bowling alley is completely dissimilar in inventory and retail activity. Even a liberal interpretation of the statute would find difficulty in making a bowling alley similar or related in service and use to a lumber yard under the facts in this case.

It is concluded, therefore, that plaintiffs are not entitled to defer the gain on the conversion. Neither party shall recover costs.