## SMEJKAL v. STATE TAX COMMISSION

James A. Smejkal appeared persona propria.

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause for defendant.

Decision for plaintiff rendered July 19, 1965.

EDWARD H. HOWELL, Judge.

This is a suit to set aside an income tax deficiency for the year 1963. The defendant tax commission disallowed plaintiffs' sale of damaged timber as an involuntary conversion.

Plaintiffs were the owners of approximately 100

acres of young growth of Douglas fir timber. The Columbus Day storm on October 12, 1962, completely destroyed part of the timber and damaged about 280 M board feet. The plaintiffs were able to salvage some of the damaged timber by moving in a portable mill and selling the lumber. The proceeds were used to purchase other timber. The plaintiffs contend the facts constituted an involuntary conversion and the State Tax Commission disagrees.

The applicable portion of ORS 316.295 relating to involuntary conversions provides:

"ORS 316.295 Involuntary conversion. (1) If property (as a result of its destruction in whole or in part, theft, seizure or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted:

"(a) Into property similar or related in service or use to the property so converted, no gain shall be recognized.

"(b) Into money or into property not similar or related in service or use to the converted property, * * *

"(A) If the taxpayer during the period specified * * * for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, * * * at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more tax years) exceeds the cost of such other property * * *

"* * * * *."

The above statute is similar to Section 1033(a) (I) (3) (A) of the Internal Revenue Code of 1954 relating to involuntary conversions.

■ The basic purpose of the involuntary conversion

statute is to allow a taxpayer to replace destroyed property or continue his investment without realizing gain where he is compelled to give up his property because of circumstances beyond his control. *S. E. Ponticos, Inc. v. Commissioner,* 40 TC 60, *rev'd on other grounds,* 338 F2d 477 (7th Cir 1964), 14 AFTR 2d 5962; *C. G. Willis, Inc. v. Commissioner,* 41 TC 468 (1964).

The sole issue is whether the transaction constitutes an involuntary conversion. There would not appear to be any argument that the timber was destroyed in part when it was blown down in the storm. Neither is there any issue about reinvestment within the proper time into "property similar or related in service or use."

The defendant's position is stated in the trial brief as follows:

"\* \* \* Involuntary conversion would occur under the circumstance if the timber had been insured and the insurance proceeds were reinvested. However, a sale of the property itself is a separate event upon which gain is to be computed. \* \* \*"

The defendant's argument that the facts do not constitute an involuntary conversion because the timber was not insured is not sound. Ordinarily an involuntary conversion is involved where insured property is wholly or partly destroyed, or where property is condemned and in either case the proceeds from the insurance or the condemnation award are reinvested in property similar or related in service or use. 3 Mertens, *Law of Federal Income Tax,* § 20.167 et seq. (1957); 5 CCH Para. 4625.01; *McCollom v. State Tax Comm.,* 2 OTR 112 (1965).

■ The statute does not require the destroyed property to be insured. It merely requires that the original

property be at least partly destroyed and "compulsorily or involuntarily converted" into property similar or related in service or use. Commerce Clearing House defines this part of an involuntary conversion as "* * * the receipt of insurance *or other compensation (or property)*, for (1) the destruction in whole or in part of property, * * *." (Emphasis supplied.) 5 CCH Para. 4625.01.

In *Masser v. Commissioner*, 30 TC 741 (1958), the taxpayer operated a trucking business on property separated by a street. The parking lot on one side of the street was sold as a result of condemnation proceedings and the taxpayer voluntarily sold the remainder across the street for cash because it was uneconomical to operate one without the other. The United States Tax Court held that the reinvestment of the proceeds from both parcels constituted an involuntary conversion. See also *C. G. Willis, Inc. v. Commissioner*, 41 TC 468 (1964).

■ Defendant relies on the following statement from 3 Mertens, *Law of Federal Income Taxation* § 20.170:

> "* * * There is no involuntary conversion where the taxpayer is morally compelled, or compelled as a matter of business expediency or economic pressure, to convert into cash, and the Code does not apply where a stock investment is disposed of because the taxpayer is faced with ruin unless he does so. * * *"

The author cites the case of *Robins v. Commissioner*, 15 BTA 1068 (1929), as authority for the above statement. In that case the taxpayer had a disagreement with his business associate and sold out his interest in the business to his associate. He contended he was forced to sell to protect his investment. The

court held he was not legally forced to sell and that he could have stood on his rights. This court agrees with the decision in the *Robins* case under the facts but it is not authority for the issue in the instant case because of the factual difference.

In *C. G. Willis, Inc. v. Commissioner, supra,* a ship owned by the taxpayer was damaged when it ran aground. The ship was sold and the proceeds from the insurance and the sale were used to buy another ship. The taxpayer argued that the ship was so extensively damaged that he was justified in selling it rather than attempting to repair it and claimed an involuntary conversion existed. The court disagreed for the reason the evidence showed the ship was repairable and that it was sold for reasons other than its damage. The court did state an involuntary conversion could not be claimed if the owner had a choice of keeping the property or selling it and that he elected voluntarily to sell it.

■ In the instant case the defendant argues that plaintiffs also had a choice. They did. Their choice, however, was between salvaging some of the down timber or letting it all stay in the woods and rot. It was not a matter of exercising sound business judgment as was mentioned in the *Willis* and *Masser* cases but it was a case of no alternative.

It is this court's conclusion that the transaction qualifies as an involuntary conversion under ORS 316.295.