## L. H. PIERCE AND LENA PIERCE v. COMMISSION

Lee A. Hansen, Jones, Brown & Coffey, Portland, represented plaintiff.

Gerald F. Bartz, Assistant Attorney General, represented defendant.

Decision for defendant rendered October 11, 1968.

EDWARD H. HOWELL, Judge.

The tax commission issued an income tax deficiency

against plaintiffs for the tax year 1964 and plaintiffs appealed.

In 1964 the plaintiffs, after notice of proposed condemnation, sold 55 acres near the Portland International Airport to the Port of Portland for $200,000. The plaintiffs contend that their case falls within the provisions of ORS 316.295 which provides for the non-recognition of gain from an involuntary conversion of a taxpayer's property if the taxpayer, within one year after the close of the first tax year in which any part of the gain is realized, makes a proper reinvestment of the proceeds into property similar or related in service or use to the converted property. The statute, as well as defendant's Reg 316.295(3)(C), provides for an extension of time to make the reinvestment if the taxpayer makes a timely and proper application and receives the consent of the commission.

The plaintiffs did not reinvest the proceeds of the 1964 sale by December 31, 1965, the time required by ORS 316.295, but they did apply for an extension.

The plaintiffs allege in their first cause of suit that the commission's failure to act on their application for an extension caused them delay "in finding and consummating a transaction for appropriate reinvestment property."

The application for an etxension which the plaintiffs filed with the commission on December 30, 1965, requested an additional year in which to reinvest the proceeds from the 1964 sale. On January 6, 1966, a representative of the commission acknowledged receipt of plaintiffs' application and stated that the request would be analyzed. On January 16, 1967, the representative wrote plaintiffs' attorney stating that the plaintiffs' 1964 return did not report the sale of the

property and inquired about the details of the reinvestment. On January 24, 1967, plaintiffs' attorney answered stating that the plaintiffs had reinvested the proceeds in property located in the State of Washington.[1] The letter also stated:

"Because Mr. Pierce has further sums for reinvestment, we would still like to defer reporting of the gain until such time as appropriate reinvestments may be made in Oregon or Mr. Pierce determines that this is not possible and elected to make payment of the tax.

"Replacing the property with similar property is difficult, as I am sure you are aware and for that reason the additional time was requested. Being limited in this reinvestment to properties in the State of Oregon makes the reinvestment even more difficult.

"We would believe that Mr. and Mrs. Pierce will reach a conclusion in respect to this during 1967 and hopefully, if you will bear with us, if reinvestment is not made, the appropriate tax will be paid upon the expiration of the time granted for reinvestment."

Treating the letter as a request for an additional extension, the commission's representative on February 21, 1967, advised plaintiffs that the request was denied because plaintiffs had not timely reinvested in qualified property.

■■ The commission concedes that the plaintiffs' first application for an extension through 1966, and the commission's acknowledgment of the application, amounted to an approval of the extension for that year. Based on the original application, the plaintiffs had

---

[1] ORS 314.290 states that laws relating to the deferral of gain from involuntary conversion of real property are limited to conversions where the newly acquired property has a situs within Oregon.

a valid extension to reinvest during 1966. They should have reinvested during that year or applied for and received another extension. They did neither. For reasons which will be mentioned later, it is difficult to determine at what time the plaintiffs consider the proceeds of the 1964 sale to have been reinvested and whether the proceeds were reinvested in property in Washington, a building on property near the airport, or a store in St. Helens, Oregon. The plaintiffs were not entitled to an extension of time as a matter of right because ORS 316.295 and the commission's Reg. 316.295 (3)(C) make it clear that the commission has discretion to grant or refuse the application. As the plaintiffs failed to reinvest in 1966, the commission was within its discretion in refusing to grant an additional extension. See *Martin Bros. v. Commission,* 3 OTR 111, affirmed 252 Or 331, 449 P2d 430 (1969). The evidence does not support the allegations in the plaintiffs' first cause of suit that the commission's acts or failure to act on their application for an extension caused their delay in making the appropriate reinvestment.

Plaintiffs' second cause of suit is based on the theory that if the commission acted properly in denying their application for an additional extension, still an inverse condemnation of their property occurred in 1953 and an appropriate reinvestment was also made in that year.

This theory requires a statement of the facts.

In 1941, the plaintiffs purchased 55 acres near the Portland International Airport. The improvements consisted of plaintiffs' residence, three other houses and a barn. Plaintiffs pastured cattle on the property until 1959 when they changed over to row crops. Part of the time the houses were rented. Some of the build-

ings were used for storage. In 1955, plaintiffs purchased an additional 50 acres approximately two miles east of the original property. According to Mr. Pierce they purchased the second property because the airplane activity at the Portland Airport became so extensive it rendered their original property unusable. The second property included improvements consisting of two barns, two houses, a shed and other buildings. Plaintiffs farmed the second property and also stored some equipment in the buildings. In 1964, after plaintiffs had been notified by the Port of Portland that it intended to condemn the plaintiffs' original property, they sold the 55 acres to the Port of Portland for $200,000.

The plaintiffs contend that the excessive flight activity over the original property constituted an involuntary taking of that property in 1953 and that the purchase of the second 50-acre tract constituted an anticipatory replacement of the converted property under defendant's Reg 316.295(3)(d).[2]

■ The rule is well established that repeated low-level flights of aircraft over private property may constitute a taking of that property if it renders the land unusable to the owner *Griggs v. Allegheny County,* 369 US 84, 82 S Ct 531, 7 L ed2d 585, *Rehearing denied,* 369 US 857, 82 S Ct 931, 8 L ed2d 16 (1962); *United States v. Causby,* 328 US 256, 66 S Ct 1062, 90 L ed 1206 (1946); *Thornburg v. Port of Port-*

---

[2] Reg 316.295(3)(d):

"(d) Prior purchase of property or stock. The section permits anticipatory replacement, but property or stock purchased before the disposition of the converted property shall be considered to have been purchased for the purpose of relacing the converted property only if such property or stock is held by the taxpayer on the date of the disposition of the converted property. * * *"

*land,* 233 Or 178, 376 P2d 100 (1963). See annotation 77 ALR2d 1355.

Mr. Pierce testified that the flight activity began to increase in 1952 and 1953. He stated that the noise on occasions had cracked plaster in their home, caused difficulty in renting the houses and forced him to quit raising cattle. However, the houses were rented at least part of the time until the property was sold to the Port of Portland in 1964; the plaintiffs had discontinued raising cattle during 1948-1950 before the flight activity started to become burdensome in 1952; the plaintiffs continued to make their home there until 1962 when they moved to property which had been purchased in the State of Washington.

The evidence does not establish that the flight activity over plaintiffs' property substantially interfered with their use and enjoyment of the property to the extent it was rendered unusable. Consequently plaintiffs cannot contend that the property which was sold to the Port of Portland in 1964 was taken in 1953.

■ The above disposes of the two issues raised in the plaintiffs' complaint. However, at the trial and in the briefs filed subsequent to the trial, the plaintiffs offered other contentions. The plaintiffs now argue that a proper and timely reinvestment was made in 1965 when all or part of the proceeds of the 1964 sale to the Port of Portland was spent in the construction of a building on the 50 acres acquired in 1955 near plaintiffs' original property. The building was used to store and service equipment belonging to Pierce Trailer and Equipment Co. Assuming that this theory is properly before the court, it is not acceptable because the new building was not "similar or related in service or use" to the original property as required by ORS 316.295. The operation of a row crop farm and

rental of farm houses is hardly "similar or related in service or use" to the construction of a warehouse building for a trailer and equipment company. See *McCollum v. Commission,* 2 OTR 112 (1965).

Plaintiffs offer still another alternative as a possible qualifying reinvestment of the proceeds of the 1964 sale. They suggest that the purchase of a Thriftway Store in St. Helens in the fall of 1967 qualifies under the statute. This position cannot be sustained for two reasons: (1) the reinvestment was not made within the time allowed by ORS 316.295, or within the extension of time granted by the commission; and (2) while the plaintiff may have been a lessor of both the converted property and the replacement property, still a Thriftway Store building can hardly be said to be similar or related in service or use to a truck garden farm.

The order of the commission is affirmed.